UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                      Civil No. 03-4325(DSD/RLE)


Abdi Gelle Mohamed,

          Petitioner,

v.                                                          **ORDER**

Larry TeBrake, Program
Director St. Peter
Treatment Center, Mark Cangemi,
District Director, Bureau of
Immigration and Customs
enforcement, Michael Garcia,
Assistant Secretary Bureau of
Immigration and Customs
Enforcement, Tom Ridge, Secretary,
Department of Homeland Security,
John Ashcroft, Attorney General of
the United States,

          Respondents.


   Michael H. Davis, Esq., Michael H. Davis Law Office, PA,
   1219 Marquette Avenue South, Suite 200, Minneapolis, MN
   55403, and Thomas Hutchins, Esq., Immigrant and Refugee
   Appellate Center, LLC, 6121 Lincolnia Street, Suite 400-
   C, Alexandria, VA 22312, counsel for petitioner.

   Thomas R. Ragatz, Esq. and Barbara E. Berg Windels, Esq.,
   Office of the Minnesota Attorney General, 445 Minnesota
   Street, St. Paul, MN 55101-2134, counsel for respondent
   Larry TeBrake.

   Mary Jo Madigan, Esq., Office of the United States
   Attorney, 300 South Fourth Street, Suite 600,
   Minneapolis, MN 55415, counsel for respondent Mark
   Cangemi.


     This matter is before the court upon the petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2241.  Based upon a review

of the file, record and proceedings herein, and for the reasons stated, the court grants the petition.

## BACKGROUND

Petitioner is a citizen of Somalia who was granted asylum in this country by the Immigration and Naturalization Service ("INS") on September 29, 1998. On January 11, 2001, he was convicted in Minnesota state court of criminal sexual conduct and sentenced to 48 months imprisonment. Petitioner's criminal case had been delayed 870 days, during which time the state court adjudged him incompetent to stand trial. Following petitioner's term of imprisonment, the state of Minnesota began involuntary commitment proceedings. In the proceedings, "unrefuted testimony" established that petitioner "has an on-going psychotic disorder, which is like schizophrenia, paranoid type." (R. at 7.) The state court found petitioner "mentally ill and dangerous" and committed him to the Minnesota Security Hospital for an indeterminate period of time.

Following petitioner's conviction, INS revoked its grant of asylum and placed petitioner in removal proceedings. On September 24, 2002, an immigration judge, after a hearing, ordered petitioner removed from the United States. Petitioner appeared at the hearing via closed-circuit television. Petitioner represented himself and was not accompanied by a guardian or custodian. The immigration judge did not conduct a competency inquiry and did not

summon anyone to assist petitioner.  Petitioner alleges that "[petitioner's] mental incompetency, video transmission errors, and translation errors marred" the removal hearing.

Petitioner appealed his removal order to the Board of Immigration Appeals ("BIA"), which affirmed on May 2, 2003.[1]  He then filed the instant petition for a writ of habeas corpus on July 25, 2003.

**DISCUSSION**

**I.  Competency**

Petitioner alleges that the immigration judge violated his right to due process of law when he failed to hold a competency hearing.  "The Fifth Amendment's due process clause mandates that removal hearings be fundamentally fair." Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004).  The law is undeveloped, however, with regard to the particular demands of "fundamental fairness" in removal proceedings against a potentially incompetent alien.  The court therefore looks to the requirements of due process in other similar contexts.  In criminal proceedings, the law recognizes an absolute due process right to a competency hearing "'whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial.'" Vogt v. United

---

[1]  The case was also litigated briefly in the United States Court of Appeals for the Eighth Circuit.  That history is fully discussed in the court's order of April 29, 2004.

States, 88 F.3d 587, 590 (8th Cir. 1996) (quoting Griffin v. Lockhart, 935 F.2d 926, 929 (8th Cir. 1991)).  However, this "procedural competency principle" exists only to ensure that a second, "substantive" competency principle is not violated.  The substantive competency principle holds that due process absolutely prohibits the trial and conviction of a defendant who is, in fact, mentally incompetent.  Id. at 590.

The substantive competency principle has no corollary in immigration proceedings.  Indeed, the law specifically contemplates that removal proceedings may go forward against incompetent aliens and that incompetent aliens may be deported.  Nee Hao Wong v. I.N.S., 550 F.2d 521, 523 (9th Cir. 1977).  Therefore, because the procedural competency principle exists merely to guarantee enforcement of the substantive principle and the substantive principle does not apply in removal proceedings, it is unclear whether the procedural principle should apply in removal proceedings.

In federal civil judicial proceedings, the rights of incompetent litigants are protected by Rule 17(c) of the Federal Rules of Civil Procedure.  Among other things, that rule directs that:

> The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Fed. R. Civ. P. 17(c). Rule 17(c) is similar to the immigration regulations promulgated to protect the due process rights of incompetent aliens. In particular, the regulations provide that:

> When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the attorney, legal representative, legal guardian, near relative, or friend who was served with a copy of the notice to appear shall be permitted to appear on behalf of the respondent. If such a person cannot reasonably be found or fails or refuses to appear, the custodian of the respondent shall be requested to appear on behalf of the respondent.

8 C.F.R. § 1240.4. Like Rule 17(c), section 1240.4 recognizes that the interests of an incompetent person involved in adversary proceedings ought to be represented by a party who possesses adequate discretion and mental capacity. Application of both rules presents an inherent difficulty, however, because neither contains any "guidance regarding the circumstances that warrant a competency inquiry" by the neutral party in those adversary proceedings. Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 (2d Cir. 2003), cert. denied, 540 U.S. 1195 (2004).

In Ferrelli, the Second Circuit considered "the question of when a court is required to inquire into the mental capacity of a pro se litigant to determine whether, pursuant to Federal Rule of Civil Procedure ... 17(c), the court should appoint a guardian ad litem or take other measures to protect the litigant's interests." 323 F.3d at 198. The court determined that the text of Rule 17(c)

imposes no duty upon a district court "to inquire *sua sponte* into a pro se [litigant's] mental competence, even when the judge observes behavior that may suggest mental incapacity." 323 F.3d at 201. Nevertheless, the court observed that, when certain information is brought to the attention of the court, "it likely would be an abuse of the court's discretion not to consider whether Rule 17(c) applied." Id. at 201. Specifically, a district court must consider invoking Rule 17(c) when it receives "evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." Id. at 201.

Ferrelli suggests that the protections afforded to pro se litigants by Rule 17(c) would become a nullity if judges were permitted simply to ignore clear evidence of incompetency. The same proposition holds in removal proceedings with respect to section 1240.4. Incompetents cannot be relied upon to assert their own procedural rights. See Ferrelli, 323 F.3d at 201 n.4 (citing United States v. 30.64 Acres of Land, 795 F.2d 796, 805 (9th Cir. 1986)). If, in the case of an unrepresented alien, an immigration judge is never obligated to inquire into the predicate fact of competency, section 1240.4 offers the alien no protection. In

6

turn, without the protection afforded by section 1240.4, it becomes doubtful whether an incompetent alien truly receives the notice and opportunity for hearing demanded by due process.

Regardless what the constitution might demand in this situation, immigration judges may not act arbitrarily or capriciously or abuse the discretion confided to them. See I.N.S. v. Yueh-Shaio Yang, 519 U.S. 26, 32 (1996) (citing Administrative Procedures Act, 5 U.S.C. § 706(2)(A)).[2] By analogy to Ferrelli, the court concludes that it is an abuse of discretion when an immigration judge, faced with evidence of a formal adjudication of incompetence or medical evidence that an alien has been or is being treated for the sort of mental illness that would render him incompetent, fails to make at least some inquiry as to whether section 1240.4 ought be applied.

In this case, the record before the immigration judge included the following facts. Petitioner was adjudged incompetent to stand trial on state criminal charges and remained incompetent for more than two years. (R. at 226.) After being tried, convicted and having served his sentence, petitioner was indefinitely committed to a state "security hospital" upon a finding that he is "mentally

---

[2] The court is aware, of course, of the differences between habeas review and review under the Administrative Procedures Act. See I.N.S. v. St. Cyr, 533 U.S. 289, 314 n.38 (2001). Nonetheless, for reasons expressed infra, the court finds that its application of this standard in these particular circumstances is consistent with the proper scope of its review.

ill and dangerous." Unrefuted testimony in petitioner's commitment proceedings established that he has "an on-going psychotic disorder, which is like schizophrenia, paranoid type . . . ." (R. at 7.)

Paranoid schizophrenia and psychosis are certainly conditions which, if not properly treated and controlled, could lead to incompetence.  Despite the evidence that petitioner suffers from these conditions and has previously been adjudged incompetent, the record contains no indication that the immigration judge considered invoking section 1240.4.[3]  The immigration judge made no inquiry regarding the status of petitioner's treatment.  When petitioner indicated that he was being medicated, the immigration judge did not ask what medications he was taking or what their effects were. The immigration judge did not ask any questions calculated to verify petitioner's orientation and state of mind.  In short, the record contains no indication that the immigration judge paused even a moment to reflect whether a custodian ought be summoned to appear on petitioner's behalf.  The court holds that this failure was an abuse of discretion.

Although the court has avoided the constitutional question

---

[3]   Although he granted several continuances to allow petitioner to obtain counsel, the immigration judge apparently made no effort to identify and summon a custodian for petitioner when counsel did not appear. See 8 C.F.R. § 1240.4. Moreover, when the immigration judge granted these continuances, he did not reference section 1240.4 or petitioner's mental problems.

presented by petitioner, it is nonetheless appropriate, given the nature of collateral review, to consider whether petitioner has been prejudiced. Cf. Al Khouri, 362 F.3d at 466 (quoting Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003)) (to establish due process claim, alien must show both procedural error and prejudice). "'Actual prejudice exists where defects in the deportation proceedings *may well have* resulted in a deportation that would not otherwise have occurred.'" Id. at 466 (quoting United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995)). The immigration judge, and the Board of Immigration Appeals on review, rested the decision to deny relief largely on the finding that petitioner's own testimony was not credible based on his prior inconsistent statements. If the immigration judge had made an appropriate inquiry into petitioner's competence, he and the Board may well have viewed the inconsistencies in petitioner's testimony in a different light and, therefore, reached a different result. Accordingly, petitioner has met his burden to demonstrate prejudice.

The court should also pause to consider whether its disposition of petitioner's claim conflicts with the scope of the court's habeas jurisdiction. Habeas jurisdiction encompasses a claim that the immigration authorities "failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner." Gutierrez-Chavez v. I.N.S., 298 F.3d

824, 828 (9th Cir. 2002) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)). Here, the court does not quibble with the manner in which the immigration judge weighed evidence regarding petitioner's competency. The problem is that the weighing was not done at all, and no consideration was given to the dictates of section 1240.4. Therefore, the court's analysis has not strayed beyond the bounds of its habeas jurisdiction.

**II. Remedy**

Because nunc pro tunc competency hearings are "hampered by inherent difficulties," Reynolds v. Norris, 86 F.3d 796, 802 (8th Cir. 1996), retrospective determinations regarding competency are strongly disfavored. See Wilkins v. Bowersox, 145 F.3d 1006, 1014 (8th Cir. 1998). Such a procedure is appropriate only when "the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the [petitioner's] condition at the time of the original ... proceedings." Reynolds, 86 F.3d at 802 (citing United States ex rel. Bilyew v. Franzen, 842 F.2d 189, 192 (7th Cir. 1988)). The court looks for the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the petitioner during the relevant time period, statements by the petitioner and the existence of medical records. See id. at 803.

10

Although petitioner was confined in the state hospital throughout the pendency of his removal proceedings, the court has no information as to what records of petitioner's treatment exist. Further, the court has no information regarding the current availability of petitioner's witnesses or other persons who may have been present and interacted with petitioner at the time of the hearings before the immigration judge. Therefore, the court determines that a nunc pro tunc competency determination is inappropriate.[4] Instead, the appropriate remedy is that petitioner receive a de novo hearing of his immigration matter at which the immigration judge should, at a minimum, examine petitioner and receive other relevant evidence regarding petitioner's present mental competency and make adequate findings with respect to the application of 8 C.F.R. § 1240.4.[5]

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus [Doc. No. 1] is granted.

---

[4] Furthermore, there is no reason to believe that the Board of Immigration Appeals had more information on these subjects than this court has. Therefore, the court finds that the Board's nunc pro tunc competency determination cannot have cured the immigration judge's error.

[5] Having selected this remedy, it is unnecessary for the court to examine petitioner's other claims for relief.

11

2.   The execution of the writ shall be stayed for 180 days following the date of this order to allow the Board of Immigration Appeals to vacate petitioner's removal order and remand the matter to the immigration judge for a de novo hearing.  Failing such action of the Board, the writ shall issue.

3.   No grant of relief under this order shall be construed to affect petitioner's civil commitment as "mentally ill and dangerous" under state law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 23, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court
